# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| M&E BAKERY HOLDINGS, LLC D/B/A BITTERSWEET and BLOWTIQUE, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 20 C 5849 ) |
| WESTFIELD NATIONAL INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case are two Chicago-based businesses—Bittersweet, a pastry shop and café, and Blowtique, a salon that offers hair and makeup services. The plaintiffs purchased commercial property insurance from the defendant, Westfield National Insurance Company. The insurance policies provided coverage to Bittersweet from November 11, 2019 to November 11, 2020 and to Blowtique from February 1, 2020 to February 1, 2021.

On March 20, 2020, Illinois Governor J.B. Pritzker, through an executive order, suspended operations of non-essential businesses due to the coronavirus pandemic. City of Chicago Mayor Lori Lightfoot issued similar orders based on her emergency powers. The plaintiffs complied with these orders and contend that they lost business income as a result of suspending their operations in Chicago. They filed claims under their insurance policies to recover for those losses, but Westfield denied the claims.

The plaintiffs filed this lawsuit seeking to recover amounts they contend are due under various policy provisions.

In their complaint, the plaintiffs allege that their losses are insured under the "business income" and "civil authority" provisions in their insurance policies; they seek a declaratory judgment that their claims are covered. They also assert claims for breach of contract based on Westfield's denial of coverage under these same provisions and contend that Westfield is subject to a statutory penalty for bad faith denial of coverage. In the alternative, the plaintiffs assert two claims on behalf of a putative class of those similarly situated, alleging unjust enrichment and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA).

Westfield has moved to dismiss the plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). It argues that the "business income" and "civil authority" provisions—which are identical and included in both plaintiffs' insurance policies—do not cover the plaintiffs' alleged losses and that an exclusion for losses caused by a virus precludes coverage.

**Background**

As indicated, the plaintiffs in this lawsuit are Chicago-based businesses that purchased commercial property insurance policies from Westfield, an insurance company based in Ohio. During the policy period, the novel coronavirus began to spread worldwide. In March 2020, Illinois state and local authorities issued orders suspending the operations of non-essential businesses to minimize the spread of the virus. The plaintiffs contend that they complied with these orders and consequently lost business income. They filed insurance claims with Westfield, seeking to recover

2

amounts under two distinct provisions of the policy: business income and civil authority.

The business income provision under the insurance policy reads as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

Pls.' Ex. B, Salon Ins. Policy, at 23-25 (dkt. no. 1-2); Def.'s Ex. 1, Bakery Ins. Policy, at 29-31 (dkt. no. 15-1). The civil authority provision reads as follows:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Bakery Ins. Policy at 32; Salon Ins. Policy at 26.

The plaintiffs contend that each of these provisions of the Westfield policy covers their losses. In response, Westfield makes two arguments. First, it contends that the plaintiffs' losses are not covered by either of these provisions. Second, it says another provision—a "virus exclusion"—bars the plaintiffs' claims for coverage. The virus exclusion provision reads as follows:

3

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
> . . .
>
> **j. Virus Or Bacteria**
> (1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

Bakery Ins. Policy at 41, 43; Salon Ins. Policy at 35, 37. The plaintiffs argue that Westfield's reading of the virus exclusion in the insurance contract is overbroad and that the exclusion does not bar coverage for their losses under the business income and civil authority provisions.

The plaintiffs filed this lawsuit against Westfield in October 2020. In the complaint, they assert several claims. In count 1, the plaintiffs seek a declaratory judgment that their losses are insured under Westfield's policies; Westfield has waived any applicable defenses; and it is obligated to pay the plaintiffs for the full amount of their losses. In count 2, the plaintiffs assert a breach of contract claim based on Westfield's refusal to cover their losses. They say that Westfield breached its obligations under the insurance contract when it denied their claims under the business income and civil authority provisions. *See* Pls.' Ex. C (dkt. no. 1-3); Pls.' Ex. D (dkt. no. 1-4). Bittersweet contends that it is entitled to $600,000 in lost business income; Blowtique alleges that it is entitled to $132,000 in lost business income. In count 3, the plaintiffs allege that Westfield is subject to a statutory penalty for bad faith denial of insurance because its denial was vexatious, unreasonable, improper, and unjustified. Hence, the plaintiffs contend that they are entitled to additional monetary relief pursuant

4

to a statutory penalty—$60,000 each. *See* 215 Ill. Comp. Stat. 5/154.6 (Illinois civil statute that imposes liability for "improper claims practice"); *see* 215 Ill. Comp. Stat. 5/155 (Illinois civil statute imposing penalty on insurers for vexatious and unreasonable action or delay in settling claims).

In the alternative, the plaintiffs assert two class action claims on behalf of themselves and all other insureds similarly situated. In count 4, the plaintiffs assert a claim of unjust enrichment under Illinois law and in count 5, the plaintiffs contend that Westfield violated the ICFA. Westfield has moved to dismiss all of the claims under Rule 12(b)(6).

## Discussion

On a motion to dismiss for failure to state a claim, the Court takes the plaintiff's factual allegations as true, draws reasonable inferences in the plaintiff's favor, and assesses whether the plaintiff has asserted a plausible basis for relief. *See, e.g.*, *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

The parties agree that the insurance policy is governed by Illinois law. *See* Compl. ¶¶ 41, 54, 83 (dkt. no. 1); Def.'s Opening Mem. at 5-6 (dkt. no. 15). The Court will therefore apply Illinois law to the parties' insurance contract dispute. Importantly, construction of an insurance policy is a question of law. *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 309, 856 N.E.2d 338, 342 (2006). "When construing the language of an insurance policy, a court is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy." *Id.* at 311, 856 N.E.2d at 342-43. "An insurance policy must be construed as a whole, giving effect to every

5

provision." *Id.* "If the words used in the policy are unambiguous, they are given their plain, ordinary, and popular meaning." *Id.* "Although insurance policies are construed liberally in favor of coverage, this rule of construction comes into play only when the policy language is ambiguous." *Id.* "Words are ambiguous if they are reasonably susceptible to more than one interpretation, not simply if the parties can suggest creative possibilities for their meaning, and a court will not search for ambiguity where there is none." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill. 2d 352, 363, 860 N.E.2d 307, 314 (2006) (citations omitted).

As indicated, the plaintiffs allege that they are entitled to recover for loss of business income caused by state and local coronavirus closure orders under the business income and civil authority provisions of the insurance policy. They also contend that in denying coverage, Westfield acted in bad faith under Illinois law. *See* Compl. ¶¶ 104-11. In their response brief, the plaintiffs say that they "reasonably anticipated that their substantial losses, due to Closure Orders, would be covered [by Westfield's policies]." Pls.' Resp. Mem. at 19 (dkt. no. 22). "At the pleadings stage," the plaintiffs contend, "[they] should be entitled to conduct discovery into whether that expectation was correct, and whether Defendant's coverage denial was vexatious." *Id.*

In response, Westfield argues that "each Plaintiff's Policy contains an express exclusion for loss or damage caused by any virus." Def.'s Opening Mem. at 4; *see* Bakery Ins. Policy at 41, 43; *see* Salon Ins. Policy at 35, 37. This virus exclusion, Westfield says, is "clear and unambiguous" and "unequivocally bars coverage" under the business income and civil authority provisions. Def.'s Opening Mem. at 17. Further, Westfield says that the plaintiffs' own observation in their complaint—that Illinois's

6

governor and Chicago's mayor ordered non-essential businesses to close to slow or stop the spread of the coronavirus—reflects that "there can be no question that a 'virus' is the ultimate cause of Plaintiffs' alleged losses." *Id.* at 18. Westfield also contends that the plaintiffs' argument—that the closure orders, not the virus, caused their losses—lacks merit. *Id.* In response, the plaintiffs reiterate that they "sustained losses as a result of the Closure Orders" and that "[t]heir operations were shut down solely because of the Closure Orders, not because anyone on their properties suffered an infection that then shut down operations." Pls.' Resp. Mem. at 16. They contend that "[u]nder the Closure Order Basis for Coverage, the virus exclusion is dead on arrival." *Id.*

**A.    Coverage-related claims**

The Court notes that the virus exclusion in Westfield's insurance policy is substantially similar to the provision at issue in another case this Court recently decided. *See Dental Experts, LLC v. Massachusetts Bay Ins. Co.*, No. 20 C 5887, 2021 WL 1722781, at *3 (N.D. Ill. May 1, 2021) (Kennelly, J.) (Exclusion stating that "[w]e will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."). In that case, the Court concluded that the "virus exclusion is plain and unambiguous: it excludes loss or damage caused by or *resulting* from any virus." *Dental Experts, LLC*, 2021 WL 1722781, at *4 (internal quotation marks omitted and emphasis in original).

In this case, Westfield's policy provides that it excludes loss "caused directly or indirectly by . . . [a]ny virus . . . that induces or is capable of inducing physical distress,

7

illness or disease." Bakery Ins. Policy at 41, 43; Salon Ins. Policy at 35, 37. The Court concludes that the virus exclusion unambiguously excludes claims for the loss of business income *indirectly* caused by a virus. As such, the plaintiffs' argument that the closure orders, not the coronavirus, caused their loss of business income, lacks merit: the closure orders were issued because of the coronavirus pandemic. Thus the loss of income was an indirect result of the coronavirus and is therefore excluded from coverage. In *Dental Experts*, the Court rejected an argument by the insured that is indistinguishable from the one the plaintiffs make here:

> Given the "resulting from" language, Dental Experts' argument—that the shutdown orders, not the virus caused loss of business income—lacks merit. The shutdown orders were enacted in direct response to the coronavirus global pandemic; it therefore follows that within the meaning of the policy, any business income loss Dental Experts suffered due to a shutdown order resulted from the virus even if it one could say that the loss was not caused directly by the virus.
>
> Although the Seventh Circuit has not addressed whether a virus exclusion provision in an insurance policy bars an insured party from claiming loss of business income due to the coronavirus pandemic, several judges of this Court have concluded—in similar coronavirus-related insurance cases— that it does. *See, e.g.*, *Riverwalk Seafood Grill Inc. v. Travelers Cas. Ins. Co.*, No. 20 C 3768, 2021 WL 81659, at *3 (N.D. Ill. Jan. 7, 2021) ("[T]he plain language of the Virus Exclusion is dispositive here and requires the Court to dismiss [plaintiff's] Complaint").
>
> Judge Kocoras explained in *Riverwalk* that the virus exclusion provision unambiguously covered coronavirus-related claims. *Id.*; *see also Firenze Ventures LLC v. Twin City Fire Ins. Co.*, No. 20 C 4226, 2021 WL 1208991, at *4 (N.D. Ill. Mar. 31, 2021) ("[T]he court joins other courts to have interpreted comparable [virus exclusion] policy language in the same manner"); *Sojo's Studios, Inc. v. Citizens Ins. Co.*, No. 20 C 4780, 2021 WL 837623, at *2 (N.D. Ill. Mar 4, 2021) ("There is simply no doubt as to what the Virus Exclusion means and Plaintiffs' litigation tactics, however clever, cannot override clear, sweeping, and unambiguous language."); *Mashallah, Inc. v. West Bend Mut. Ins. Co.*, No. 20 C 5472, 2021 WL 679227, at *2 (N.D. Ill. Feb. 22, 2021) (rejecting argument that "Governor Pritzker's COVID-19 orders are an independent intervening cause" and concluding that virus exclusion bars claims); *AFM Mattress Co., LLC v.*

8

> *Motorists Com. Mut. Ins. Co.*, No. 20 C 3556, --- F. Supp. 3d ---, 2020 WL 6940984, at *2 (N.D. Ill. Nov. 25, 2020) ("Plaintiff's argument that its losses occurred because the Indiana and Illinois governmental entities issued shutdown orders, not because of the virus itself, is unpersuasive.").

*Dental Experts, LLC*, 2021 WL 1722781, at *4. For this reason, the Court concludes that the plaintiffs' claim in count 2—that Westfield breached the insurance contracts when it denied them coverage under the business income and civil authority provisions—lacks merit. The same is true of the claim in count 1 that the plaintiffs are entitled to a declaratory judgment that their losses are insured under the policies. The Court dismisses these claims with prejudice, without leave to amend, because amendment would be futile given the terms of the virus exclusion.

In count 3 of their complaint, the plaintiffs allege that Westfield is subject to a statutory penalty under 215 Ill. Comp. Stat. 5/154.6 and additional relief under 215 Ill. Comp. Stat. 5/ 155 for "refusal to pay Plaintiffs' claims without conducting reasonable investigations based on all available information" and its "failure to provide reasonable and accurate explanations of the bases in its denials." Compl. ¶ 109. Section 155 provides a remedy to "insureds who encounter unnecessary difficulties resulting from an insurance company's unreasonable and vexatious refusal to honor its contract with the insured." *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 807 (7th Cir. 2002) (internal quotation marks omitted). But "when an insurer denies the claim of an insured because no coverage exists, the insurer has not failed to honor its contractual obligations under an insurance policy." *Id.* "As such, Illinois courts allow a cause of action to proceed under Section 155 only if the insurer owed the insured benefits under the terms of the policy." *Id.*

In this case, as in *Dental Experts, LLC*, "the 'virus exclusion' in the insurance

policy undercuts" the plaintiffs' claim that Westfield unjustifiably denied them coverage based on the business income and civil authority provisions. See *Dental Experts, LLC*, 2021 WL 1722781, at *5. The Court therefore dismisses count 3 with prejudice.

**B.     Alternative class action claims**

The plaintiffs assert two class action claims on behalf of themselves and similarly situated businesses insured by Westfield. In count 4, they contend that Westfield was unjustly enriched because Westfield "has continued to charge and accept full premium payments as if their insureds' properties remained fully functional and operational." Compl. ¶¶ 6, 113-131. Because the plaintiffs' businesses "have been physically impaired by the Closure Orders" and they have "lost the means to generate . . . revenue," "the "universe of risks for which [Westfield] would pay business interruption and other claims are now mitigated or entirely absent." *Id.* Accordingly, the plaintiffs allege, they are entitled to "receive a rebate of premium for the windfall that Westfield kept for itself by reduced claims due to Closure Order shutdowns, partial operations mandates and other constraints"; without a rebate, Westfield will be unjustly enriched. *Id.* ¶ 7.

To state a claim for unjust enrichment under Illinois law, a plaintiff must allege that the "defendant has unjustly retained a benefit to the plaintiff's detriment and . . . the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." See *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014) (internal quotation marks omitted). The "doctrine of unjust enrichment has no application," however, in a case "[w]here there is a specific contract that governs the relationship of the parties." *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604, 836

N.E.2d 681, 704 (2005). Although Illinois law (like federal procedural rules) does not foreclose pleading in the alternative, a plaintiff "may not include allegations of an express contract which governs the relationship of the parties, in the count[] for unjust enrichment . . . ." *Id.* at 604, 836 N.E.2d at 704. In this case, the factual allegations underlying the plaintiffs' unjust enrichment claim inescapably concern a contractual dispute—Westfield's denial of insurance coverage and its retention of the premiums paid for the insurance. Because the claim is premised upon a contractual relationship, it cannot proceed.

The plaintiffs attempt to get around the applicable law by suggesting that their unjust enrichment claim sounds in tort and not contract, *see id.*, but it is clear from the complaint that their factual allegations entirely concern the parties' obligations under the insurance contracts; their unjust enrichment claim is thus undeniably "premised on a failure to fulfill contractual terms." *Miller v. Lewis Univ.*, No. 20 C 5473, 2021 WL 1379488, at *6 (N.D. Ill. Apr. 11, 2021) (Kennelly, J.) (internal quotation marks omitted). Accordingly, "dismissal of the unjust enrichment claim is appropriate." *Id.*; *see Oyoque v. DePaul Univ.*, --- F. Supp. 3d ---, 2021 WL 679231, at *5 (N.D. Ill. Feb. 21, 2021) (Kennelly, J.) (dismissing unjust enrichment on similar grounds); *see also Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 742 (7th Cir. 2017) ("the district court was correct to dismiss the count alleging unjust enrichment because [the plaintiff]'s claim of fraud and statutory violation, upon which her unjust enrichment claim was based, were legally insufficient and an express contract governed the parties' relationship").

In count 5, the plaintiffs say that Westfield violated the ICFA, 815 Ill. Comp. Stat. 505/1. Compl. ¶¶ 132-146. Specifically, the plaintiffs contend that Westfield's "retention

N.E.2d 681, 704 (2005). Although Illinois law (like federal procedural rules) does not foreclose pleading in the alternative, a plaintiff "may not include allegations of an express contract which governs the relationship of the parties, in the count[] for unjust enrichment . . . ." *Id.* at 604, 836 N.E.2d at 704. In this case, the factual allegations underlying the plaintiffs' unjust enrichment claim inescapably concern a contractual dispute—Westfield's denial of insurance coverage and its retention of the premiums paid for the insurance. Because the claim is premised upon a contractual relationship, it cannot proceed.

The plaintiffs attempt to get around the applicable law by suggesting that their unjust enrichment claim sounds in tort and not contract, *see id.*, but it is clear from the complaint that their factual allegations entirely concern the parties' obligations under the insurance contracts; their unjust enrichment claim is thus undeniably "premised on a failure to fulfill contractual terms." *Miller v. Lewis Univ.*, No. 20 C 5473, 2021 WL 1379488, at *6 (N.D. Ill. Apr. 11, 2021) (Kennelly, J.) (internal quotation marks omitted). Accordingly, "dismissal of the unjust enrichment claim is appropriate." *Id.*; *see Oyoque v. DePaul Univ.*, --- F. Supp. 3d ---, 2021 WL 679231, at *5 (N.D. Ill. Feb. 21, 2021) (Kennelly, J.) (dismissing unjust enrichment on similar grounds); *see also Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 742 (7th Cir. 2017) ("the district court was correct to dismiss the count alleging unjust enrichment because [the plaintiff]'s claim of fraud and statutory violation, upon which her unjust enrichment claim was based, were legally insufficient and an express contract governed the parties' relationship").

In count 5, the plaintiffs say that Westfield violated the ICFA, 815 Ill. Comp. Stat. 505/1. Compl. ¶¶ 132-146. Specifically, the plaintiffs contend that Westfield's "retention

N.E.2d 681, 704 (2005). Although Illinois law (like federal procedural rules) does not foreclose pleading in the alternative, a plaintiff "may not include allegations of an express contract which governs the relationship of the parties, in the count[] for unjust enrichment . . . ." *Id.* at 604, 836 N.E.2d at 704. In this case, the factual allegations underlying the plaintiffs' unjust enrichment claim inescapably concern a contractual dispute—Westfield's denial of insurance coverage and its retention of the premiums paid for the insurance. Because the claim is premised upon a contractual relationship, it cannot proceed.

The plaintiffs attempt to get around the applicable law by suggesting that their unjust enrichment claim sounds in tort and not contract, *see id.*, but it is clear from the complaint that their factual allegations entirely concern the parties' obligations under the insurance contracts; their unjust enrichment claim is thus undeniably "premised on a failure to fulfill contractual terms." *Miller v. Lewis Univ.*, No. 20 C 5473, 2021 WL 1379488, at *6 (N.D. Ill. Apr. 11, 2021) (Kennelly, J.) (internal quotation marks omitted). Accordingly, "dismissal of the unjust enrichment claim is appropriate." *Id.*; *see Oyoque v. DePaul Univ.*, --- F. Supp. 3d ---, 2021 WL 679231, at *5 (N.D. Ill. Feb. 21, 2021) (Kennelly, J.) (dismissing unjust enrichment on similar grounds); *see also Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 742 (7th Cir. 2017) ("the district court was correct to dismiss the count alleging unjust enrichment because [the plaintiff]'s claim of fraud and statutory violation, upon which her unjust enrichment claim was based, were legally insufficient and an express contract governed the parties' relationship").

In count 5, the plaintiffs say that Westfield violated the ICFA, 815 Ill. Comp. Stat. 505/1. Compl. ¶¶ 132-146. Specifically, the plaintiffs contend that Westfield's "retention

and collection of full and undiscounted / unrebated premiums" despite "not tak[ing] on commensurate risk in supporting those premiums" from businesses affected by closures, "are deceptive and unfair acts or practices prohibited by ICFA." *Id.* ¶ 140. Further, they allege that Westfield's knowingly and intentionally "misrepresented and omitted facts regarding the premium charged . . . and the commensurate risk actually taken on and the coverage actually afforded." *Id.* ¶ 141. As a result, the plaintiffs contend, they "suffered harm in the form of excess premiums paid in exchange for their Policies." *Id.* ¶ 145.

To state a claim under the ICFA, the plaintiff must allege "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damages to the plaintiff (5) proximately caused by the deception." *McIntosh v. Walgreens Boots All., Inc.*, 2019 IL 123626, ¶ 21.

As Westfield contends, the plaintiffs are, via this claim, seeking to hold Westfield liable for breaching the insurance policies; they cite no misrepresentations unconnected with the policies themselves. The plaintiffs' complaint entirely concern the applicability and construction of the insurance contracts, not any deceptive act or practice on the part of Westfield. *See* Compl. ¶¶ 132-146. The plaintiffs appear to contend that Westfield's enforcement of the contract—in "den[ying] coverage . . . and keeping its windfall [of premiums]"—was a deceptive act. Pls.' Resp. Mem. at 24. But "[w]hen allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir.

2011). "[A] deceptive act or practice involves more than the mere fact that a defendant promised something and then failed to do it. That type of misrepresentation occurs every time a defendant breaches a contract." *Id.* (internal quotation marks omitted).

In this case, the plaintiffs' ICFA claim "is nothing more than an allegation of breach of contract dressed up in Consumer Fraud Act clothing." *Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 403 (7th Cir. 2014). Illinois law is clear: "[a] breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 169, 835 N.E.2d 801, 844 (2005); *see also Greenberger*, 631 F.3d at 399 ("Here, as in *Avery*, the consumer-fraud and contract claims rest on the same factual foundation; no distinct deceptive acts are alleged."). For these reasons, the Court dismisses the plaintiffs' ICFA claim.

## Conclusion

For the foregoing reasons, the Court grants Westfield's motion to dismiss [dkt. no. 14] the plaintiffs' complaint. Unless the plaintiffs file, by May 21, 2021, a motion for leave to amend that attaches an amended complaint that states a viable claim, the Court will enter judgment against them. The case is set for a telephonic status hearing on May 28, 2021 at 9:45 a.m., using call-in number 888-684-8852, access code 746-1053. Counsel should wait for the case to be called before announcing themselves.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 7, 2021